**Paul VASQUEZ, Plaintiff,**

v.

**Thomas A. COUGHLIN, Commissioner of Department of Correctional Services, M.C. Maher, Acting Captain, Auburn Correctional Facility, Defendants.**

No. 6:95–CV–104.

United States District Court, N.D. New York.

April 7, 1998.

Paul Vasquez, Ossining, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (Lisa Ullman, Asst. Attorney General, of counsel), for Defendants.

## MEMORANDUM—DECISION AND ORDER

MCAVOY, Chief Judge.

### I. BACKGROUND

The present issue, whether Plaintiff's procedural due process rights were violated, is before this Court for a second time. Plaintiff Paul Vasquez, a *pro se* state prison inmate, commenced this 42 U.S.C. section 1983 action on December 10, 1994. On December 15, 1995, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that Plaintiff has no protected liberty interest under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Plaintiff opposed the motion, arguing that he has a liberty interest in good time credits and in not being confined to the Special Housing Unit ("SHU") for 545 days.[1] This matter was referred to Magistrate Judge Daniel Scanlon, Jr. for a Report–Recommendation pursuant to 28 U.S.C. section 636(b) and N.D.N .Y.L.R. 72.3(c).

---

1. Plaintiff's confinement in SHU was the result of two separate misbehavior reports that were filed against him on December 18, 1991. One report, filed by Corrections Officer Clifford, alleged that plaintiff had secreted weapons in the bushes. The other report, filed by Armando Mazzone, Dental Lab Instructor, alleged that Plaintiff had assaulted another inmate. On January 7, 1992, Defendant M.C. Maher, serving as hearing officer at the Auburn Correctional Facility, found Plaintiff guilty of all charges brought against him after a Tier III disciplinary hearing and imposed SHU confinement of 545 days with a recommended loss of good time credit.

257

On July 7, 1997, Magistrate Judge Scanlon concluded that Plaintiff had a protected liberty interest in good time credits and recommended that Defendants' motion for summary judgment be denied. Judge Scanlon was, however, unable to determine whether Plaintiff's confinement in SHU created a liberty interest or whether Plaintiff was afforded due process during the disciplinary hearing because he found the record inadequate. Defendants filed objections.

On September 20, 1997, this Court issued a Decision and Order finding no liberty interest in good time credits and recommitted the matter to Magistrate Judge Scanlon to address the question of whether Plaintiff's 545 day confinement in SHU gave rise to a protected liberty interest. Defendants thereafter submitted, *inter alia*, copies of Plaintiff's Tier III hearing transcript for Judge Scanlon's review.

On December 4, 1997, Judge Scanlon issued a Report–Recommendation finding that Plaintiff had a protected liberty interest in his SHU confinement, but that Plaintiff nevertheless received all the due process necessary during his disciplinary hearing. Judge Scanlon thus recommended that Defendants' motion for summary judgment be granted and that the Complaint be dismissed. Plaintiff filed objections.

## II. DISCUSSION

### A. Standard of Review

Under Rule 72(b) of the Federal Rules of Civil Procedure, the District Court "shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." *See also* 28 U.S.C. § 636(b)(1)(C). In making this *de novo* determination, the Court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

### B. Liberty Interests in SHU Confinement

The sole issue before this Court is whether Plaintiff's confinement in SHU created a liberty interest sufficient to invoke procedural due process protection; and, if so, whether Plaintiff was afforded due process of law.

 District courts in the Second Circuit have taken various approaches in deciding whether SHU confinement creates a protected liberty interest. Some courts, for example, have refused to decide the issue, presuming a liberty interest, but disposing of the matter on other grounds. *See Pacheco v. Vanwyk,* 1997 WL 642540 (N.D.N.Y.1997) (Pooler, J.) (question of whether SHU confinement was an atypical, significant hardship was not reached because plaintiff was not deprived of due process); *Hailey v. Provost,* 1997 WL 627547 (N.D.N.Y.1997) (Pooler, J.) (same); *Kingwood v. Coombe,* 1997 WL 323913 (S.D.N.Y.1997) (same); *Lee v. Coughlin,* 1997 WL 193179 (S.D.N.Y.1997) (same); *Howard v. Pierce,* 981 F.Supp. 190 (W.D.N.Y.1997) (same); *Edmonson v. Coughlin,* 1996 WL 622626 (W.D.N.Y.1996) (same); *Mitchell v. Irvin,* 1995 WL 818664 (W.D.N.Y.1995) (same); *Charles v. Coughlin,* 985 F.Supp. 88 (E.D.N.Y.1997) (same). Other district courts in this circuit, while not agreeing on a determinative length of confinement, have focused on duration as the sole relevant factor, essentially ignoring the conditions of confinement. *See, e.g., Marino v. Klages,* 973 F.Supp. 275, 278 (N.D.N.Y. 1997) (Scullin, J.) ("any SHU confinement under a year in time is not an atypical or significant hardship on the prisoner."); *Dawes v. Dibiase,* 1997 WL 376043 (N.D.N.Y.1997) (McAvoy, C.J.) (365 days insufficient); *Polanco v. Allan,* 1996 WL 377074, at *2 (N.D.N.Y.1996) (McAvoy, C.J.) (365 days); *Arosena v. Coughlin,* 1996 WL 607096 (W.D.N.Y.1996) (249 days); *Carter v. Carriero,* 905 F.Supp. 99, 103–104 (W.D.N.Y. 1995) (270 days); *Ruiz v. Selsky,* 1997 WL 137448 (S.D.N.Y.1997) (192 days). One court has even held that 2,555 days in SHU is not an atypical and significant hardship. *Medina v. Bartlett,* 1995 WL 529624 (W.D.N.Y. 1995) (relying on time in SHU as the determinative factor).

Some courts in this circuit, however, follow a two step analysis wherein the court must determine (1) whether the *length of confinement* creates an atypical, significant hardship; and (2) whether the *conditions of confinement* create an atypical, significant hardship in relation to ordinary incidents of prison life. These courts primarily rely on the specific factual record presented to them. *See Delaney v. Selsky,* 899 F.Supp. 923 (N.D.N.Y.1995) (McAvoy, C.J.) (365 days SHU confinement ordinarily does not create an atypical and significant hardship, but where plaintiff is over seven feet tall and the bed is too small, the question becomes whether the conditions of confinement create an atypical and significant hardship); *Husbands v. McClellan,* 957 F.Supp. 403 (W.D.N.Y.1997) (length of confinement alone did not impose an atypical and significant hardship, but the conditions of confinement did impose such a hardship); *Warren v. Irvin,* 985 F.Supp. 350 (W.D.N.Y.1997) (neither length of confinement nor conditions imposed an atypical and significant hardship); *Hernandez v. Tiede,* 1996 WL 863453 (W.D.N.Y.1996) (136 days SHU confinement requires a factual determination as to whether confinement was an atypical and significant hardship on inmates); *Tulloch v. Coughlin,* 1995 WL 780970 (W.D.N.Y.1995) (180 days does not create a liberty interest, but court implies that any length in SHU confinement is acceptable so long as the conditions are not an atypical and significant hardship in relation to the ordinary incidents of prison life); *Wright v. Miller,* 973 F.Supp. 390 (S.D.N.Y.1997) (stating that time in SHU may create a liberty interest if plaintiff establishes an atypical and significant hardship); *Gonzalez v. Coughlin,* 969 F.Supp. 256 (S.D.N.Y.1997) (same); *Cespedes v. Coughlin,* 969 F.Supp. 254 (S.D.N.Y.1997) (104 days in SHU may implicate a liberty interest depending on the factual record); *Nogueras v. Coughlin,* 1996 WL 487951, at *5 (S.D.N.Y.1996) (stating 210 days in SHU does not implicate a liberty interest in itself, plaintiff must also demonstrate that he has suffered an atypical and significant hardship in relation to the ordinary incidents of prison life).

As the aforementioned cases demonstrate, district courts in this Circuit have utilized a variety of approaches in determining whether a liberty interest has been created in SHU confinement under *Sandin.* In grappling with this issue, a number of decisions in the Northern and Southern Districts of New York have utilized the presumption of a liberty interest approach, while others have determined that the sole relevant factor is the length of SHU confinement. The Eastern District of New York, in comparison, has consistently held that a court should consider the duration of the prisoner's sentence *and* the conditions of confinement relative to the circumstances faced by other inmates in the general population. *See Roucchio v. Coughlin,* 923 F.Supp. 360, 372 (E.D.N.Y.1996); *Charles,* 985 F.Supp. at 88. The Western District of New York, while not wholly consistent, has invariably followed the two step analysis in its most recent rulings. *See, e.g., Husbands,* 990 F.Supp. 214; *Warren,* 985 F.Supp. at 350; *Jermosen v. Kelly,* 1997 WL 736543 (W.D.N.Y.1997); *Thomas v. Irvin,* 981 F.Supp. 794 (W.D.N.Y.1997).

Plainly, there is a lack of continuity among the district courts regarding this issue. It is therefore necessary for this Court to take another look at *Sandin* and examine the recent Second Circuit decisions interpreting *Sandin* in order to determine whether Plaintiff has a liberty interest in his SHU confinement.

In *Sandin,* the Supreme Court held that state-created liberty interests protected by the Due Process Clause are

generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The *Sandin* court cautioned, however, that the Due Process Clause does not protect every change in the conditions of confinement that may have a substantial adverse impact on a prisoner. *Sandin,* 515 U.S. at 478 (citing

*Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).

According to *Sandin,* discipline in SHU does not automatically present the type of "atypical, significant deprivation in which a state might conceivably create a liberty interest." 515 U.S. at 486. The *Sandin* court noted two examples of hardships that would qualify as atypical and significant: an unwanted administration of psychotropic drugs or an involuntary commitment to a mental hospital. 515 U.S. at 479 n. 4, 115 S.Ct. 2293 (citing *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)).

The Second Circuit recently addressed the question of what is necessary to show a liberty interest in *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997). The Second Circuit stated that it is not enough to look at the length of time a prisoner has been confined to SHU in determining whether he has a liberty interest. *Brooks,* 112 F.3d at 49. Instead, the district courts must also make a factual finding as to the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population. *Id.* (citing *Miller v. Selsky,* 111 F.3d 7,8–9 (2d Cir.1997)).

In *Brooks,* the Plaintiff received 180 days of segregated cell confinement with loss of privileges after being found guilty of engaging in a physical altercation with four prison guards at the Elmira Correctional Facility. Brooks claimed that he was denied his due process right to call witnesses at the disciplinary hearing. The district court disagreed, ruling that Brooks had no liberty interest in being free of disciplinary confinement because his confinement did not impose a hardship that is atypical and significant under *Sandin. Brooks,* 112 F.3d at 47.

The Second Circuit reversed, stating that "[a] comparison between administrative and disciplinary confinement was part of the Court's analysis in *Sandin* ... [and that] the decision in *Sandin* entailed careful examination of the actual conditions of the challenged punishment compared with ordinary prison conditions." *Id.* at 49 (citing *Miller,* 111

F.3d at 8–9). The *Brooks* court instructed that "[a] court must examine the specific circumstances of the punishment." *Id.* "The mere fact that prison regulations allow for lengthy administrative confinement in some situations does not obviate this central factual inquiry." *Id.*

The Second Circuit has consistently stated that district courts are required to make factual findings with respect to the conditions of confinement at issue in each case. *See, e.g., Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997); *Brooks,* 112 F.3d at 49; *Miller,* 111 F.3d at 8–9; *Giakoumelos v. Coughlin,* 88 F.3d 56, 62 (2d Cir.1996); *Samuels v. Mockry,* 77 F.3d 34, 38 (2d Cir.1996). Thus, it is insufficient in this Circuit for a court to simply rely on the length of confinement as the determinative factor.

Accordingly, in order for this Court to determine whether Plaintiff has a liberty interest in avoiding SHU confinement, it is necessary for the Court to examine the specific circumstances of his confinement. Magistrate Judge Scanlon has not made such factual findings. The Second Circuit, however, has made it clear that length of confinement standing by itself is insufficient for determining whether Plaintiff has a liberty interest. *See Brooks,* 112 F.3d at 49.

It is not necessary, however, to recommit this matter to Magistrate Judge Scanlon. Defendants have submitted the sworn Affidavit of Anthony J. Annucci, Deputy Commissioner and Counsel for the New York State Department of Correctional Services ("DOCS"), which Plaintiff has not contested. Annucci's Affidavit, "based on DOCS' records, regulations, directives and policy guidelines, as well as on [his own] personal knowledge" provides an analysis of SHU confinement in comparison with other types of confinement. (Annucci December 11, 1995 Affidavit at ¶ 1). Annucci states that

inmates placed in SHU for any reason except protective custody under [N.Y. Comp.Codes R. & Regs. tit. 7,] § 301.5 are allowed out of their cell for one hour of outdoor exercise daily (§ 304.10), a minimum of two showers a week (§ 304.5), and unlimited legal visits and one non-legal

visit per week (§ 302.2[j][1][I] ). Inmates placed in SHU for protective custody are permitted out of their cells for three hours a day, in addition to visits permitted inmates in general population (§ 330.4).

15. All inmates placed in SHU may be provided with counseling services on a daily basis (§ 304.10), are given the opportunity to participate in a cell study program to the extent possible based on the inmate's overall behavioral adjustment (§ 304.11), are provided with daily access to sick call (§ 304.4) and are permitted books and periodicals from the facility's law library (§ 304.7) and general library (§ 304.12).

16. The commissioner has promulgated similar regulations for general population inmates. Such inmates are permitted at least the same one-hour a day of exercise (7 NYCRR § 320.3[d][2] ) as granted inmates in SHU, and at least three showers a week (320.3[d][1] ), or one more shower than guaranteed inmates in a SHU. General population inmates are also permitted out of their cells to eat in the mess hall three times a day.

(*Id.* at ¶¶ 14—16). Therefore, aside from not being allowed to partake of meals in the "mess hall" and perhaps an additional shower each week, there are many similarities in the treatment of inmates confined to SHU and the general inmate population.

█ Plaintiff has the burden of proving that the conditions of his confinement constituted an atypical, significant hardship in relation to the ordinary incidents of prison life in order to recover damages under 42 U.S.C. section 1983. *See Wright,* 973 F.Supp. at 394; *Nogueras,* 1996 WL 487951, at *5. Plaintiff has offered no challenge to the submitted facts of Annucci, nor has he disputed them with facts of his own. Thus, based on the undisputed evidence in the record, the Court finds that the conditions of Plaintiff's confinement are not an atypical, significant hardship in relation to the ordinary incidents of prison life. Consequently, Plaintiff does not have a liberty interest in his SHU confinement and thus the Court need not address his due process claims.

## III. CONCLUSION

Defendants' motion for summary judgment is hereby **GRANTED** and Plaintiff's Complaint is **DISMISSED** in its entirety. The clerk is **ORDERED** to close the file.

**IT IS SO ORDERED.**